JOHN D. VAN BEUREN and wife v. JOHN B. DASH and others.

By the true construction of the provision of the Revised Statutes to prevent lapses in devises in certain cases (part 2, ch. 6, tit. 1, art. 3, § 52), the word *descendant*, wherever occurring, is limited to issue in any degree of the person referred to, and does not embrace collateral relations.

Accordingly, where a testatrix devised separate aliquot shares of her real estate to two sisters and to certain nephews and nieces, several of whom died in her life-time, some leaving children, and others without issue; *Held* that the shares of all those devisees so dying before her, lapsed, and that such shares descended to her heirs at law.

*Held*, also, that the circumstance that three-fifth parts of the whole estate devised, had lapsed under the foregoing rule, did not authorize the court to declare the whole will void.

THIS action was brought for the partition of certain lands in Queens county and in New York. The parties claimed title from Mrs. Hannah Bowie. She died in 1841, without parents, husband or children surviving her. She left a will, dated 12th July, 1834. By her will she devised all the real estate of which she should die possessed to her niece Lucretia A. Brazier, during her natural life, and at her decease she gave the said real estate to the children of her sister Mary, one-fifth, to Elizabeth Brazier her sister one-fifth, to Daniel B. Dash and Ann Van Beuren, and their heirs, one-fifth, to Margaret Wood her niece one-fifth, and to Ann Catherine Dash, her sister, one-fifth.

Daniel B. Dash and Ann Van Beuren, who would have taken one-fifth under the will if they had lived, died before the testatrix, each leaving children, and Ann Catherine Dash who would have taken one-fifth if she had lived, died before the testatrix, intestate and unmarried.

The only question raised in the courts below was whether the shares devised to those devisees, who died before the testatrix, descended to the heirs-at-law of the testatrix, or vested in the children or heirs-at-law of the devisees.

The special term of the supreme court held that the

estate vested in the heirs-at-law of the devisees, and that the devises did not lapse. On appeal the general term reversed this decision, holding that the devises lapsed and the lands passed to the heirs-at-law of the testatrix. From this decision appeal was taken to this court.

*M. S. Bidwell*, for the appellants.

The appellants submit that their case can be supported on three distinct grounds:

I. Under the revised statutes (2 R. S. 66, § 44 [52]);

II. On the true construction of the will;

III. If these should be overruled, then on the ground of a general intestacy as to the real estate, except the devise of a life estate to Lucretia Brazier.

1. On the first ground, the appellants submit that the nephew and niece of the testatrix, named in her will, were " descendants " within the operation of the statute. (2 R. S. 66, § 44 [52].) 1st. Within the meaning of the language according to a reasonable construction. 2d. If not within the language, yet within the equity of the statute.

2. On the second ground, they submit that if the foregoing proposition should be overruled, then, according to a just and fair construction of the will, the heirs of the nephew and niece, named in the will, are entitled to take as devisees by way of substitution in the place of their deceased parents, the devise being construed as if it were in terms a devise to such nephew, &c., or his heirs.

3. If these points should be overruled, they submit that as such a construction of the statute and devise will work a destruction of three-fifths of the devise of the remainder, it must be presumed to be inconsistent with the general intent and purpose of the testatrix to uphold the devise in favor of the devisees of the other two-fifths, and, therefore, that there should be held to be an intestacy of the entire remainder.

I. The statute provides that whenever any estate shall

be devised to a child or other descendant of the testator, and such devisee shall die during the lifetime of the testator, leaving a child or other descendant who survives such testator, such devise shall not lapse, but the property so devised shall vest in the surviving child or other descendant of the devisee, as if such devisee had survived the testator and had died intestate.  (2 R. S. 66, § 44 [52].) This is unquestionably and, indeed, emphatically a remedial statute.   A remedial statute should receive favorable consideration and a liberal construction, so as to advance the remedy and enlarge rather than confine its operation, and thereby to promote the object and purpose and carry out the spirit of the legislature.   This is an established and familiar doctrine; and it must be presumed, therefore, that it was the intention of the legislature that it should be construed in this manner.   (Dwarris on Statutes, 719 [9 Law Library]; Sedgwick on Statutes, 359 *et seq.;* 1 Kent's Com. 465; *The Mayor of New York* v. *Lord*, 17 Wend. Rep. 285, 292; *The Dean and Chapter of St. Peter's, York*, v. *Middleburgh*, 2 Younge & Jervis's Rep. 196, 215; *Bearpark* v. *Hutchinson*, 7 Bing. Rep. 178.)   This rule should be applied in considering the following question: Is that statutory provision (unquestionably a remedial and most reasonable provision) confined to lineal descendants of the testatrix? or does it not extend to other descendants of the testatrix?

1. (*a.*) The very statement of the question carries on the face of it an answer; for it proves, *ex vi termini*, that lineal descendants are not the only descendants of the testatrix; and, as the statute is not in its terms confined to lineal descendants, other descendants come within its beneficial and most equitable and reasonable operation, according to the ordinary and proper use of language.

(*b.*) And so they do, according to the technical language of the law, and of that part of the law which relates particularly to such subjects.   One to whom lands descend must surely be a descendant of him from whom they

descend. " Descent is the title whereby a man, on the death of his ancestor, acquires his estate by right of representation as his heir at law." (Chitty on Descent, 2, 3, 44; 2 Black. Com. 201; Co. Litt. 13 b. 237, a. b.; 3 Kent's Com. 374.) " On failure of lineal descendants the inheritance shall descend to his collateral relatives living of the blood of the first purchaser." (Chitty on Descent, 44.)

(*c.*) Our statutory law speaks the same language. It uses the term " lineal " descendants to designate one description of descendants; and it declares that if there be not lineal descendants, the real estate of an intestate shall descend to collateral relatives. (1 R. S. 751, § 1; 1 R. S. 752, §§ 7, 8; 1 R. L. 52, § 3.) Why should this expression, " lineal descendant," be used by writers and in statutes so universally, if all descendants must necessarily be lineal descendants? How can land descend to one who is not a descendant?

(*d.*) This distinction between lineal and collateral descendants is no novelty, but has been recognized from the earliest periods. " Descent is of two sorts; either lineal or collateral. Lineal descent is when a descent is conveyed in the same line of the whole blood; as grandfather, father, son, son's son, and so downward. Collateral descent is out in another branch, drawn from above of the whole blood; as grandfather's brother, father's brother, and so downward." (Termes de la Ley, voc. Descent.) " Lineal descent is conveyed downward in a direct line. Collateral descent is derived from the side of the lineal." (Co. Litt. 10, 6.) " The division of estates are of two kinds: 1st. Lineal descents, as from the father or grandfather to the son or grandson. 2d. Collateral or transversal, as from brother to brother, uncle to nephew, or *e converso.*" (Sir MATTHEW HALE, Ch. J., Ventr. 415; Com. Dig. Descent. [c. 14.].) " Collateral descent is that which takes place to persons who spring out of the whole blood, as another branch thereof, such as the grandfather's brother and so downward." (Chitty on Descent, 88, 89.) " Descent

is either lineal or collateral. The latter is that which springs out of the side of the line or blood." (Encyclopedia Britannica, voc. Descent.) .

(*e.*) The principle involved in the question in this case has in fact been declared and established by the highest authority, in the case of *McCarthy* v. *Marsh*, (1 Seld. R., 263.) In that case, the question arose under another clause of the same code, (1 R. S. 754, § 22,) which enacts that no person shall be precluded from inheriting by reason of the alienism of any ancestor of such person. It was decided in that case, upon full and careful consideration, and after a very elaborate argument, that a man might, within the meaning of this law, be an ancestor of one who was not his lineal descendant, but only a collateral relative. According to every rational use and interpretation of language, applied to such subjects, ancestor and descendants are correlative terms; and it cannot properly or reasonably be said that a man is not the descendant of his ancestor.

(*f.*) This agrees with the views of an eminent philologist and lexicographer, who is celebrated, particularly, for the accuracy and exactness of his definition. Webster defines a " descendant" as any " person proceeding from an ancestor in any degree."

(*g.*) That there is nothing absurd or extraordinary in this extended meaning of the word, is proved by the definition contained in the British Statute, 3 and 4 Will. 4, Ch. 106, § 1, which declares that the word " descent" shall mean the title to inherit, by reason of consanguinity, as well where the heir shall be an ancestor or collateral relation, as where he shall be a child or other issue, and that the expression " descendants " of any ancestor shall extend to all persons who must trace their descent through such ancestor.

(*h.*) It appears, therefore, that in such a case as this, a nephew is a descendant of the testatrix: 1. According to popular speech and common parlance; 2. According to technical and legal phraseology—the phraseology of jurists

and legislators; 3. And according to exact and critical philology.

(*i.*) Such, therefore, is the meaning of the word in the statute, according to a rigid and literal construction of the very language used. *A fortiori*, it is to be adopted in the liberal and benign spirit in which a remedial statute is to be construed.

2. (*a.*) But if this construction be not admissible, the case, at all events, comes within the equity of the statute; the decisions are almost innumerable in which the courts have extended the operation of a statute beyond the meaning of the language, to cases within its equity; that is, to cases of the same kind, and to which the principle contained in the statute is fairly applicable. The doctrine was laid down clearly and fully in the earliest period of our common law jurisprudence, and has been applied, freely and constantly, at all times since. (Plowd. R., 465, 467, 36, 53, 59, 82; Co. Litt., 24 b, 365 b; 4 Co. R., 4, 2, 6; Vin. Abr. Statute Construction, [E.] 6, pl. 38, 39, 41, 43, 44, 45, 53, 54, 55; Dwarris on Statutes, 718, 723, 726, 728; Sedgwick on Statutes, 296 et seq.; Com. Dig. Parliament, [R.] 13, 15; Bac. Abr. Statute [I. 6.]; 1 Sugd. on Powers, 173, [15 Law Liby.]; Ex parte Roberts, 3 J. C. R., 43; *Meacham* v. *Sternes*, 9 Paige R., 398; *Cole* v. *Savage*, 10 Paige R., 590, 591; 2 Rolle R., 500; Wynch R., 123; Sir W. Jones, 39; *Garrison* v. *Howe*, 17 N. Y. R., 465, 466; *Owens* v. *Carson*, 2 Vern. R., 237; 1 Eq. Ca. Abr., 3 pl. 6; *Williams* v. *Routledge*, 2 Burr. R., 747; *Young* v. *Ames*, 2 Burr. R., 901.) This principle of extending a precept beyond the import of the language to cases *ejusdem generis*, is of general and familiar application, and is introduced frequently into discourses from the pulpit. An instance of it is to be found in Dr. Paley's sermon on Pure Religion.

(*b.*) This doctrine is peculiarly just and proper in its application to remedial statutes. Lord Mansfield declared that " in remedial cases the construction of statutes is extended to other cases within the reason or rule of them."

(*Atchison* v. *Everett*, Cowp. R. 382, 391.)   And Dwarris refers to a case in one of the old reports in which it was said, "It gives a remedy which was not at the common law, and therefore, shall be taken by equity."   (Dwarris on Statutes, 719.)   Chancellor WALWORTH says: "A remedial act is to be construed liberally to carry into effect the intention of the legislature; and it may be extended, by construction, to other cases within the same meaning, though not within the words of the statute."   (10 Paige's R. 590.) And he adduces examples in illustration and proof of this principle; indeed, he acted in 9 Paige's R. 399, 403, upon this principle.   That this is a case within the equity of the statute, within the reason or rule of the statute, cannot for a moment be doubted.   The revisers, in proposing this provision, made the remark: "It is presumed that this section only requires to be read to be admitted as perfectly just."   (3 R. S. 2d ed. 633.)   No argument can be necessary to prove that the same reasons which render such a provision just in favor of lineal descendants, apply to a collateral relative, and that it is as necessary to prevent injustice in one case as in the other.

(*c.*) Such a construction will effectuate the intentions of the testatrix; a contrary construction will defeat such intentions and work injustice.   The doctrine of lapsed devises in such cases was founded on artificial reasons which no testator knew or could appreciate.   There can be no reasonable doubt that it defeats the intention of testators; no one in making such a devise intends to make it a condition that at his death the devisee shall be living, and that if he died the previous day, the estate devised should not go to his heirs, although it would if he lived a day longer; on the contrary, it is intended by the testator to be a boon and benefit to him and his family; that is, undoubtedly, the object, intention and expectation of testators in such cases.   The rule has worked injustice and frustrated the designs of testators; this construction will obviate such

injustice and disappointment of testators' intentions, and ought therefore to be adopted.

3. (a.) The clause under consideration was introduced into the revised statutes upon a suggestion of the revisers, contained in the following note: "It is presumed this section only requires to be read, to be admitted as perfectly just. It is taken from the laws of Massachusetts, vol. 1, p. 94, section 8, and the laws of Virginia, 1 vol. revised code, page 376, 3." This note implies that there was no substantial difference between the laws of those several states respectively, on this subject, or between those laws and this provision. The law of Virginia is expressed in the same language as that contained in our revised statutes, viz: "When any estate can be devised, &c., to any person, being a child or other descendant of a testator." The law of Massachusetts is in these words: "When any child, grandchild, or other relation, shall die, &c." The revisers evidently considered these laws substantially the same; this is apparent from the note which has been cited, and from their not pointing out any distinction or any reason for a preference of one to the other. It may fairly be inferred that such was the understanding of the legislature in enacting the law. We have good reason, therefore, to believe that the expression in the revised statutes, a child or other descendant of the testator, was used by the legislature as equivalent to the expression (used in the law of Massachusetts), a child, grandchild, or other relation of the testator, which of course would include nephews.

(b.) This consideration seems to have received little or no attention from the surrogate in the case of *Armstrong* v. *Moran* (1 Bradf. R. 314). He assumes that the difference in language between the revised statutes and the Massachusetts statute was material, and that it indicated an intention to adopt a different rule from the latter. But could the revisers say it was taken from the law of Massachusetts, if they intended to propose not the adoption of that law but one materially different from it? If, however,

they considered the laws of Massachusetts and Virginia substantially alike, they might reasonably, and would naturally, say of this provision that it was taken from the laws of those states. It is a fair inference, therefore, from this note, that they understood this provision to be substantially the same as the law of Massachusetts, and it is reasonable, therefore, to suppose that the Legislature which adopted it, upon this recommendation, understood it in the same way. It seems proper to make this observation upon the opinion of the surrogate, because it will undoubtedly be much relied upon; although it is not an authority, being a decision of a subordinate and inferior court, and a court, moreover, which has no jurisdiction of questions of the law of real property. The opinion was also *obiter dictum*, as the parties claiming could not sustain their case even if the word " descendant" had been interpreted as correlative of " ancestor," not being next of kin entitled under the statute of distributions. The surrogate has quoted some remarks of Lord ELDON and others, on the force and meaning of the word descendant, but they are not applicable to the case. They were designed to express the opinion that the word " descendant," in the case then under consideration, included all lineal descendants, and not merely those in the next degree; but they had no reference to the question whether they were not as broad in their operation as the correlative term " ancestor."

4. The question, however, is not whether the words " descendants" of a person may not, in deeds or wills, sometimes mean those only who are his issue; but the question in this case is whether, in this statute, which forms a part of a code, it may not, without any unwarrantable violence, be construed as a correlative of the word " ancestor" used in a statute, which is in *pari materia*, and which forms a part of the same code; whether, as the word " ancestor" means any relative of one from whom property descends, the word " descendant" may not, upon sound principles of

26

analogy, mean any relative to whom property comes by succession or descent; whether a person who is in the line of descent as to such property is not, within the intention and meaning of the statute, a descendant; that is the question in this case.

II. But if this clause of the revised statutes should be construed so strictly as to apply only to lineal descendants, and can not be extended, even by equity, to other cases which seem to be within the same reason and mischief, it will be proper to consider the language of the will, in connection with the other provisions of the revised statutes. ·

1. There are two provisions of the revised statutes to be considered in this connection: 1st. The term "heirs" is not requisite to create or convey an estate in fee. (1 R. S. 748, § 1.) 2d. A person is authorized to devise, at any time, all the real estate which he may be entitled to devise at the time of his death. (2 R. S. 57, § 5.) This is virtu·ally a declaration or enactment that a will of real estate, like a will of personal property, may speak as at the testator's death. (4 Kent's Com. 541 to 543; and see also *Blaney* v. *Blaney*, 1 Cush. R. 107, 116.) In· this connection, also, some well-settled rules of construction of the common law may be considered.

(*a.*) To support a devise or effectuate the testator's intention, the word "and" may be construed as synonymous with the word "or." · (1st Pow. on Dev. by Jarm. .379, 380, 384, [5 Law Lib. N. S.].) This construction has often been made. (3 Atk. R. 408; 3 Ves. R. 454; 7 id. 458; 1 Cox R. 112; 1 Ves. Senr. 20; 2 Keen, 272, 273; 2 Yo. & Coll. Ch. R. 299; 1 Wend. R. 396, 397.)

(*b.*) When an instrument cannot operate in the way the party executing it intended, it may, (to effectuate the purpose and object which the party had in view,) operate in a way not intended. (*Roe d. Wilkinson* v. *Tranmarr*, Willes' R. 684; Broom's Maxims, 237, et seq., [34 Law Library, N. S.].)

(*c.*) Where there is in a will a general intention consistent with the rules of law, but it cannot be carried into effect in the way the testator had designed or intended, the court will give effect to this general intention, though the particular mode of accomplishing it, which the testator contemplated, should be disregarded; or, as it is sometimes expressed, the general intention is to prevail though the particular intent should be sacrificed; in other words, the principal object which the testator had in view is paramount to the particular way of attaining it. Accordingly, where there is a limitation for life " and no longer," to a person unborn, with remainder in tail to his first and other sons, as they cannot take as purchasers but may take as heirs of the body, and as the estate is clearly intended to go in a course of descent, it shall be construed as an estate tail in the person to whom it is expressly limited for life and no longer. (*Robinson* v. *Robinson*, 1 Burr. R. 38, 50 to 52; 3 T. R. 96. *Chapman* v. *Brown*, 3 Burr. R, 1626, cited by the Master of Rolls, 2 Ves. Jr. 365.) In such a case, the court, in order to carry out the principal or paramount intent, will construe an express estate for life into an estate tail and expunge the limitation in tail to the sons. (See an analogous decision of Lord KENYON cited by the Lord Chancellor, 2 Ves. Jr. 711. See also 1 Peere Williams, 382; 1 Eden's R. 119, 129; 2 Wils. R. 322; Wilm. Opin. 222; 2 B. C. C. 54, 55, 56; 4 Ves. Jr. 329; 12 Mass. R. 543; 3 Pet. R. 117; 5 B. P. C. 278, [3 id. 180, Toml. Ed.]; 4 T. R. 82, 87; 5 id. 299, 303; 7 id. 529, 530; 8 id. 9; 11 J. R. 170, 172; 1 Sumn. R. 245, and the authorities there cited in notes, 6 Cruise Ch. 9, Tit. 37, Devise pl. 6, p. 158; Sheph. Touch. by Preston, 87 [14 Law Library, N. S.].)

(*d.*) A construction which will give force and effect to every word will be preferred to one which will render some of the words inoperative. (2 Pow. on Dev., by Jarm. 8, rule XIV., 5 Law Lib. N. S.; *Morrall* v. *Sutton*, 1 Phill. Ch. R. 536, 537.) In *Dover* v. *Gregory*, (10 Sim. R. 399,)

Sir L. SHADWELL, V. C., said: " The court in construing a will is bound to give a meaning to every word if it can, and not to reject any word as being a surplusage if it can be avoided."

(e.) The construction of a will should be favorable and reasonable. (2 Black. Com. 379, 381; Broom's Max. 238; *Doe dem. Haw* v. *Earles*, 15 Mees. and Wels. 454; Lovelass on Wills, 274, 9 Law Lib. N. S.; Parsons on Wills, 32, 70 Law Lib. N. S.; 2 Williams on Executors, 931.)

(f.) The court will presume against a partial intestacy; and a construction which will prevent it will be preferred to one which will permit it. (Ward on Leg. 11, 12; *Booth* v. *Booth*, 4 Ves. R. 407; *Morrall* v. *Sutton*, 1 Phill. Ch. R. 537; *Stehman* v. *Stehman*, 1 Watts' R. 466, 475; *Reeves* v. *Reeves*, 1 Dev. Ch. R. 386, 388.)

2. The testatrix devised the share in question to her nephew, Daniel B. Dash, and his heirs. She made devises in a similar form to other nephews and neices, and to her two surviving sisters. She evidently intended to benefit his numerous family, and to make an equitable and equal division of property among her sisters and the issue of her deceased brother and sisters. It is manifest that she designed to make a division of this property among these collateral relatives *per stirpes*, appropriating to each separate stock an equal share. Her object plainly was not to give it to particular individuals or personal favorites, but to leave it in the manner which the law deems equal and just. (1 R. S. 752, §§ 8, 9.) Daniel B. Dash and her two sisters died after the will was made. She made no alteration of the will; which fact is inexplicable if she had believed that the shares designed for them would lapse, and that as to this property, she would die intestate; but which is perfectly intelligible if she supposed it would go to their families. If it should be construed as a mere lapsed devise, their families and descendants will lose all the benefits of this provision of the will; there will be an intestacy as to their shares, and an unequal and inequitable

distribution of her property, contrary to her undoubted and manifest purpose and wishes.

3. A construction producing a more equitable result will be more reasonable and favorable, and has been properly adopted by the court at special term.

(*a.*) If the devise had been in form, "to Daniel B. Dash or such persons as shall upon his decease be his heirs," or if it had been to "Daniel B. Dash or his heirs," it would have been a good devise to his heirs, if he had died during the life of the testatrix. (*Getting* v. *McDermott*, 2 My. & K. 69; 4 Edw. Ch. R. 665.) But if the word "and" be construed as synonymous with the word "or," which (as shown before), has often been done, the clause will have the same effect. And by such a construction the words "and his heirs" will have some effect and operation; whereas by a different construction they will have no effect at all, as the words "heirs" would, in such a case, be superfluous and useless. It is true that in the case of *Brett* v. *Rigden* (1 Plowd. R. 345), (which is the leading case in support of the doctrine of lapsed devises), it is said that the heirs are not named to take immediately, but only to express the quantity of estate which the designated devisee would have. But when the reason for this decision is examined, it will appear that the decision is not an authority against the defendants in this case, but the reverse. The reason expressly assigned is, that "the devisor could not properly make an estate of fee simple in the devisee without mentioning his heirs." As this reason for the rule has ceased to exist, the rule must cease also. The foundation on which it rested is gone, and it must, therefore, fail: *cessante ratione cessat lex.* It is implied in the decision that if the devisor could properly make an estate in fee simple in the devisee without mentioning the heirs, the words might, in case of the death of the devisee in the devisor's lifetime, operate so as to prevent a lapse and to make the devise take effect in the heirs of the devisee. But it has been shown that the words "and heirs" are

unnecessary to create a fee simple (1 R. S. 748, § 1), and are therefore altogether superfluous and inoperative, if construed as words of limitation merely. To give them effect, they should be construed as intended, to operate by way of substitution or alternative. Otherwise, they will have no effect. But it is a rule to adopt such a construction, if possible, as will give effect to every word. *Supra*, p. 14, sub. 4. This will harmonize with another maxim of law: *Nemo est hæres viventis*. (Danv. Abr. 84, pl. 13.) As long as Daniel B. Dash was living, no one was his heir; on his death, certain persons, *eo instanti*, became his heirs. It would operate, therefore, as a devise to Daniel B. Dash solely, if living at the testator's death, for no one at that time could be his heirs; but if he should then be dead, it would vest the entire estate in his heirs; for, as to him (then being dead), it would be void. (2 Black. Com. 107, 170.) This consideration supports and gives effect to this devise. By this construction the words "and heirs" will operate as a provision against a lapse, to take effect only in the event of the death of Daniel B. Dash in the devisor's lifetime, (*Hawn* v. *Banks*, 4 Edw. Ch. R. 664.) For the construction of words otherwise inoperative, as provisional or substitutionary, to guard against a lapse, authorities, entitled to respect, are not wanting. (See *Doe d. Lifford* v. *Sparrow*, 13 East R. 359; *Gittings* v. *McDermott*, 2 My. & K. 69, 73; 2 Roper on Leg. [last ed.] 1413; *Girdlestone* v. *Doe*, 2 Sim. R. 225; *Jones* v. *Torin*, 6 Sim. R. 255; *Turner* v. *Moore*, 6 Ves. R. 557; *Horne* v. *May*, 2 Danv. Abr. 35 pl. 14; and see *Northey* v. *Burbage*, Prec. in Chan. 471; *Willing* v. *Baines*, 3 Peere Williams, 113; *Humphreys* v. *Howes*, 1 Russ. & My. 639; *Walker* v. *Main*, 1 Jac. & Walk. 1; *Mackinnon* v. *Peach*, 2 Keen's R. 555.)

(*b.*) If the testatrix had made this will after the death of Daniel B. Dash, the clause would have been construed as a devise to his heirs. This would have been a favorable and reasonable construction, and would have been in accordance with the emphatic opinion of Chief Justice

POPHAM, a very able judge, (1 B. & P. 610; 3 Ves. R. 674; 6 Co. R. 75; Cro. Jac. 166), in the case of *Fuller* v. *Fuller* (Cro. Eliz. 423–424.) But, as a will of real estate, under the revised statutes, should be construed, as speaking, (that is, as having been executed,) at the time of the testator's death, the same effect should be given to it as if it had been executed at that time. (*Doe d. York* v. *Walker*, 12 Mees. & Wels. R. 600.) Especially in a case like this, where the testatrix intended it to have such an effect, as is evident from her having made the devise, in express terms, of all the property of which she should die possessed. According to this construction, the heirs of Daniel B. Dash took, as devisees, under the clause of the will under consideration.

(*c.*) By either of these constructions a partial intestacy, which would otherwise be produced, will be avoided, and the general intention of the testatrix will be carried out; and although it may not be in the very way she designated, the great object which she had in view will be accomplished, and an effect alike reasonable and equitable be given to a provision which otherwise, contrary, undoubtedly, to her intention, will be entirely inoperative.

III. If none of these views are correct, it must be considered whether the court can uphold and carry into effect the other portions of the residuary devise, after such great changes have been caused by death, subsequent to the date of the will.

1. The will contemplated an equal division of the property among her sisters and the descendants of her deceased brother and sisters *per stirpes*. That the testatrix had a plan in devising this remainder is evident; and it is evident, also, what that plan was. It was not to devise it according to a predilection for particular persons, but to divide it among her sisters and the children of her deceased brother and sisters, *per stirpes*, to give it for the benefit of their respective families, according to this fair and reasonable rule. This was the plan which the devisor had formed

for the distribution of the property; of this there can be no doubt. Events occurring after the will was made, have frustrated this just and equal plan, and nullified a part of the devise. To give effect to the other part of it, would be directly contrary to the manifest plan and purpose of the testatrix, and would be inequitable, unreasonable and unjust. It is to be presumed that it could not have been the devisor's intention that such a great and vital change in her deliberate and plainly expressed plan should be carried out; and, therefore, in conformity with decisions in similar and analogous cases (*Coster* v. *Lorillard*, 14 Wend. 265, 349; *Hawley* v. *James*, 16 Wend. 61; *Root* v. *Stuyvesant*, 18 Wend. R. 257, 317, 318; *McSorely* v. *Wilson*, 4 Sand. C. R. 515; *Harris* v. *Clark*, 3 Seld. R. 242; *Amory* v. *Lord*, 5 Seld. R. 403), the whole residuary devise in fee should be set aside, and the property be left to the operation of the law of descent, especially as the very plan and purpose of the testatrix will be carried out in this way, although it is a different way from that which she had anticipated.

2. The fact that the judgment of the court at special term was based upon a different ground from the one last mentioned is unimportant. The question is whether that judgment was right, not whether the reasons of the court were right. If they were erroneous, yet, if the judgment was not erroneous, it should not be reversed. The judgment was that the parties were entitled severally to certain specified shares. If they were severally entitled to these respective shares, the judgment was not erroneous, but was the very judgment which should have been given, although their right and title might depend upon a different principle or rule of law from that on which the court relied. In such a case, although the court erred in its reasons, yet it came to the right conclusion. The judgment, therefore, was not erroneous, and it should be affirmed, and that of the general term should be reversed. (*Fenton* v. *Reed*, 4 J. R. 53; *Curtis* v. *Hubbard*, 1 Hill R.

336; *Hanford* v. *Artcher*, 4 Hill R. 276; *The Merchants' Bank* v. *Spalding*, 5 Seld. R. 61; *Magie* v. *Baker*, 14 N. Y. Rep. 438; *Titus* v. *Orvis*, 16 N. Y. Rep. 618; *Davis* v. *Packard*, 7 Pet. R. 282; *Shepherd* v. *Nabor*, 6 Ala. Rep. 631, 638; *Major* v. *Germantown Railroad*, 3 W. & S. 91; *Clark* v. *Boyd*, 6 T. B. Monr. 295; *Ormsby* v. *Hunton*, 3 Bibb. R. 299; *Sanders* v. *Johnson*, 1 Bibb. R. 322; 1 Str. R. 371; *Smith* v. *Dobson*, 3 Mann & Gr. R. 62.)

*B. W. Bonney & E. S. Van Winkle*, for the respondents.

I. The testatrix, Hannah Bowie, left no child or lineal descendant her surviving; the devises in question were to her sisters, nephew and niece, who are usually called "relatives," "collateral relatives," and "next of kin." (1 R. S. p. 752, sec. 7; 2 R. S. p. 97, sec. 75.)

II. Before the revised statutes of 1830, it was well settled law, in New York and elsewhere, that all devises of real estate lapsed, in case of the death of the devisee named in the will during the life time of the testator. (*Mowatt* v. *Carow*, 7 Paige, 328; *Bishop* v. *Bishop*, 4 Hill, 138; *Denn* v. *Bagshaw*, 6 Term R. 518.)

III. By the enactment now in question, the legislature has changed the previously settled rule of law in those cases only where the devisee named in the will was a child, grandchild, or other issue of the testator, and died before the testator's decease, leaving a child, grandchild, or other issue who survived the testator.

1. The words of a statute are to be taken in their ordinary and familiar signification and import; and regard is to be had to their general and popular use, for, "*Jus et norma loquendi*" is governed by usage, &c. (2 Dwarris on Statutes, 702; 9 Law Library, 47; *McCluskey* v. *Cromwell*, 11 N. Y. R. 593, 601.)

2. "Descendant," in ordinary and familiar usage, always means the children, grand-children, or other issue of an ancestor. "Any person proceeding from an ancestor:

issue, offspring in the line of generation *ad infinitum.*"
(Webster's Dictionary.) "The offspring of an ancestor."
(id.)

3. Legal lexicographers give to the word the same definition. "'Descendant,' one who descends or is descended from another. A relative in the descending line—the opposite of ascendant. 'Descendants' is a good term of description in a will, and includes all who proceed from the body of the person named." (Burrill's Law Dict'y.) "'Descendants' are the posterity, those who have issued from an individual; and include his children, grand-children, and their children to the remotest degree. The descendants from what is called the direct descending line. See 'line.'" (Bouvier's Law Dictionary.)

4. By commentators and other law writers, the term "descendants" is used as synonymous with "issue." (4 Kent's Com., lecture 65, 373, *passim.*) "If the owner of lands dies without lawful descendants, leaving parents, the inheritance shall ascend to them." (Id. 392–3.) "If no parents, the brothers and sisters or their descendants take the whole." (Id. 294.) "A gift to descendants receives a construction answering to the obvious sense of the term, namely, as comprising issue of every degree." (2 Jarman on Wills [Perkins' *edition*], 32.) "'Descendants' is a good term of description, and includes all those who proceed from the body of the person named, as for instance 'grandchildren.'" (2 Hilliard on Real Property, 573.) "The word issue embraces both children and grandchildren, whether born before or after the making of the will." (Id. 572.) "'Descendants:' under this description is comprised every individual proceeding from the stock or family referred to by the testator." (2 Williams on Executors, 1000.) "When the description 'issue' is employed in a will as a word of purchase, it will, in its ordinary import, comprise all those who can claim as descendants from or through the person to whose issue the bequest is made; that is, grandchildren and great grandchildren, as well as

children." (Id. 999.) " '*Legacies to descendants.*' The natural import of the term is sufficient to include every individual proceeding from the stock or family referred to by the testator, so that a legacy to 'the descendants of B.' will comprehend all his children, grandchildren," &c. (1 Roper on Legacies, ch. 2, § 9, 136.)

5. In judicial decisions, also, " descendants" has been uniformly used as having the same signification as " issue." " When used as a word of purchase, it (issue) has always been considered as synonymous to and the same as 'descendants;' and whoever can make himself out a descendant of the person to whose issue the bequest is made, has a right to be considered as *persona designata* in that bequest. The word (issue), therefore, embraces all the 'descendants.'" (*Davenport* v. *Hanbury*, 3 Vesey, 257.) By counsel *arguendo:* Issue is "*nomen collectivum,*" comprehending all descendants. (*Freeman* v. *Parsley*, 3 Vesey, 421.) Legacy to the " descendants of A and B equally," held that all descendants (children and grandchildren) take *per capita.* (*Butler* v. *Stratton*, 3 Brown C. C. 367.) " Devise of real estate in reversion so as all the descendants of the said S. T. should together be entitled only to one moiety of the said premises, and all the descendants of the said A. L. should together be entitled to no more than the other moiety thereof; and that none of such descendants, either of S. T. or A. L., should be entitled to any greater or other share of the said respective moieties of the said respective premises than his, her, or their father or mother would have been entitled to if living." (*Legard* v. *Haworth*, 1 East, 120.) Held that the grandchildren of S. T. and A. L., though in *esse* at the date of the will, can only take *per stirpes*, &c. (See Opinions of Justices, 129–30, and Arguments of Counsel, 124, 128.) Master of the rolls: " It is clearly settled that the word 'issue,' unconfined by any indication of intention, includes all 'descendants." (*Leigh* v. *Norbury*, 13 Vesey, 340.) " Devise to the descendants of Francis Ince, now living in and about Seven Oaks, in Kent,

or hereafter living anywhere else:" Master of the rolls: "The word 'descendants' means all those who proceeded from his body, and therefore both the grandchildren of Francis Ince are entitled." (*Crossly* v. *Clare*, Ambler, 397.) By the will of John Garnett, Peter Pierson was requested, in case he should die without issue living at his death, to dispose of certain property "to and among the descendants of my late aunt Ann Coppinger, his grandmother." Held that the words were imperative, and created a trust in favor of the descendants of Ann Coppinger. (*Pierson* v. *Garnett*, 2 Brown C. C. 38.) The chancellor affirmed the decision of the master of the rolls, saying: "If the word used had been 'relatives,' it would go to those within the statute of distributions, but under these words it will go only to such relations as are 'descendants,' which is still more limited." (S. C., 2 B. C. C. 226, 230.)

6. In the revised statutes the term "descendant" or "descendants" is invariably used in the sense of "issue" or lineal descendants or descendant. (1 R. S. p. 751, sections 1 to 15 inclusive; 2 R. S. p. 96, sections 72 to 75 inclusive.) In connection with the sections of the revised statutes above mentioned, we read the section now in question—2 R. S. p. 66, section 52—and respectfully insist that the words "child or other descendant of the testator," as there used clearly mean and were intended to mean a "child or other lineal descendant, or issue of the testator."

7. In all the cases decided in this state since the revised statutes went into effect (except in this case at special term), the same definition has been given to the word "descendants," for which we now contend. "A legacy to a sister's child is not a legacy to a descendant of the testator. By a descendant is not meant any relative, to whom, in some possible contingency, property might descend, but lineal descendants, issue of the body." (*Armstrong* v. *Moran*, 1 Brad. Surr. R. 314.) "The term descendants properly includes every person descended from the stock referred to. The word issue is co-extensive with descendants, and

includes every degree." (*Barstow and Goodwin*, 2 Brad. Surr. R. 413.)

IV. No argument in favor of the construction for which the appellants contend, can be legitimately drawn from the use of the word " descent" in the statute. That word was first used as signifying "succession by law to an estate in lands," or "the title by which a man on the death of his ancestor acquires his estate by right of representation as his heir at law," at a time when, under the feudal system then prevailing, none could take title to lands by succession, except such as were the issue or lineal descendants of the first feudatory; and in default of such issue, the lands escheated to the feudal lord. (2 Black. Com. 200, &c.) And the same word has continued to be used in the same sense, as expressing the kind of title by which land is acquired, although the class of persons who may take land by that title, has been, from time to time, enlarged, until it has come to include parents, and collateral relatives, as well as children or other issue of the owner who died intestate. But the word " descendant " or " descendants " has never, either in legal phraseology, or in common parlance, been used as a generic term to designate all such persons as do or may take land by descent. "Descendant" has been and is always used in an active sense, as designating a person moving, descending or proceeding from another person, and never in a passive sense, as meaning the recipient of something which descends, or comes to him by descent. "Descendee" might, perhaps, properly designate such a recipient.

V. It was the intent of the legislature, by the statute in question, to give to the issue of any child or grand-child of a testator, who had died before the decease of such testator, the same right and interest to and in property devised or bequeathed to such child or grand-child, which said issue would have had to the portion of the estate of the decedent which such child or grand-child, if living, would have inherited or taken by descent, in case said decedent had

died intestate; and this intent is fully effected by giving to the word "descendant," as used in the statute, its popular as well as legal signification of "issue."

INGRAHAM, J. The main ground upon which the appellants rest their appeal, is that by the statute the devises to those devisees who died before the testatrix, did not lapse, but that the estate so devised, vested in the children or other heirs at law of the devisee, in the same manner, and to the same extent as if such devisee had survived the testatrix.

By the statute (3 R. S. 5th ed. p. 146, § 4) it is enacted: "Whenever any estate, real or personal, shall be devised to a child or other descendant of the testator, and such legatee or devisee shall die during the lifetime of the testator, leaving a child or other descendant who shall survive such testator, such devise or legacy shall not lapse, but the property so devised or bequeathed shall vest in the surviving child or other descendant of the legatee or devisee, as if such legatee or devisee had survived the testator and had died intestate."

The decision of the questions raised, depends entirely on the question, what was meant by the legislature in using the word descendants in this section. The same word is used in both clauses of the section, and the same interpretation must be given to it. If the sisters, and nephews and nieces of the testatrix can be considered as descendants, then the statute would operate, and the estate would pass in like manner to their children or collateral relatives; but if they are not descendants within the meaning of the term as so used, then the statute does not apply.

There can be no doubt but that prior to the passage of this statute these devises would have lapsed, in consequence of the death of the devisee before the testatrix; nor did it alter the rule that the devise was made to the devisee and his heirs. (*Page* v. *Page*, 2 Stra. 820; *Mowatt* v. *Carow*, 7 Paige, 328; *Bishop* v. *Bishop*, 4 Hill, 138.)

And this rule still remains in force, unless it be held that brothers and sisters, and nephews and nieces are descendants of the testatrix.

The meaning of the word "descendant," as given by Webster is, "any person proceeding from an ancestor in any degree, issue, offspring in the line of generation."

The use of the word descendants in a devise has received the limited construction which confines it to issue. In *Cropley* v. *Clare* (Amb. 207), a devise of real estate to the descendants of A, &c., was held to apply to those who proceeded from the testator's body. In *Legarth* v. *Haworth* (1 East, 120), the word descendants was confined to children and grandchildren.

In *Haydon* v. *Willshere* (3 Durn. & East, 372), the word issue is held to be co-extensive with descendants. (2 Hilliard on Real Property, 573; *Davenport* v. *Hanbury*, 3 Vesey, 257; *Leigh* v. *Norbury*, 13 Ves. 340.) No case has been cited to us, nor have I been able to find any, where a devise to descendants has ever been construed as meaning any more than issue or lineal descendants. But all the cases confine the term to issue of the body. Nor is there any use of the word in the revised statutes that will admit of any other construction. Thus in the chapter of descents (1 R. S. 751), land descends to the lineal descendants, and afterwards to collateral relatives. So in the third and fourth sections, land descends to the children living, and descendants of such children as shall have died. In the third section it is provided if the intestate dies without descendants, then the inheritance shall go to the father. The sixth section provides that if there is no brother or sister, and no descendants of a brother or sister, the inheritance shall descend to the mother. So in section fourteen of 1 R. S. p. 735. In the case of illegitimate persons dying without descendants, the estate descends to the mother. In all these cases, and wherever else the word is used in connection with title to real estate, I think it is apparent that the legislature meant to confine the

term "descendants" to the issue, and not to extend it to collateral relatives.

But we are urged, even if the construction contended for by the appellants be not admissible, to extend the statute to this case because it is within the equity of the statute, if not within its meaning.

It does not appear to me that we are warranted to adopt such a rule in a case of this kind. The law, until the passage of the act relied on, was the other way. The legislature altered it so far as to give to the issue of a devisee the estate which such devisee would have taken if he or she had survived the testatrix. So far it was an equitable provision. But I do not see any propriety in extending the rule to collateral relatives in whom the testatrix might have no interest, and to whom she might not have been related. To extend that provision to collateral relatives would not certainly carry out the intent of the testatrix. It was given to the devisees to benefit them, but the court has no right to presume that the same cause would have induced the testator to bestow her estate on distant collateral branches of the family.

It is also urged, on the part of the appellants, that the devise being to the devisees and their heirs, the title should pass notwithstanding the death of the devisee. Such a form of devise was necessary, before the revised statutes, to express the intent to give a fee, and the same form is used now, in many instances, to avoid doubt as to the intent of the testator. The mere fact that other words may be used to show such intent, is no reason why any other interpretation should be given in the use of such words now, from what they received formerly.

The law, as it existed previously, did not pass any estate to the heirs of the devisee where he died before the testator, and the use of the same words should not have any such effect, although they may be unnecessary to pass a fee to the devisee if he had lived.

Nor is it at all clear that it would be carrying out the

intent of the testatrix to adopt the views of the appellants. It probably would be in the case of those devisees who died leaving issue, but there is nothing from which we can conclude that the testatrix would have given her property to the collateral relatives. There is no propriety in adopting a conclusion of this kind, because it would be more equitable, when it is plain from the will and the statute that neither in terms authorizes such a construction.

In regard to the residue of the will, there is no ground for interfering with it because one or two specific devises have failed. The others are perfect in themselves, and the devisees are entitled to their shares. This is not a case in which the plan of the whole will is affected by the failure of one or more to take the portion devised to them. Any such rule would subvert every will, if for any cause a devise of part is bad.

I am for affirming the judgment of the supreme court.

DENIO, Ch. J. The judgment in this case will depend mainly upon the construction to be given to the statute for preventing lapses of devises and legacies in certain cases. The provision is that "whenever any estate, real or personal, shall be devised or bequeathed to *a child or other descendant* of the testator, and such legatee or devisee shall die during the life time of the testator, leaving *a child or other descendant* who shall survive such testator, such devise or legacy shall not lapse, but the property so devised or bequeathed shall vest in the *surviving child or other descendant* of the legatee or devisee, as if such legatee or devisee had survived the testator, and had died intestate." (R. S. part 2, chap. 6, title 1, art. 3, § 52.) The testatrix, with whose will we are dealing, devised her real estate to a niece for life, and gave the remainder, in five shares: to two surviving sisters, one share each; to two nephews, the children of a deceased sister, one share; to a nephew and niece, the children of a deceased brother, one

27

share; and to a niece, the child of another deceased sister, one share, to hold to them and their heirs and assigns forever. The testatrix lived several years after executing her will, surviving the devisees of three of the shares, and leaving her surviving the devisees of two of the shares. Certain of the devisees who died in the life time of the testatrix left issue. These devisees, if they had survived the testatrix, would have taken, under the will, two shares in the remainder. The other of the devisees, who predeceased the testatrix, and to whom a whole share was given, died without issue. The devisee for life survived the testatrix about fifteen years, and this action, which was for a partition, was brought soon after the termination of that life estate. Numerous changes, by death and by alienation, had in the mean time taken place among the devisees and their issue, and among those who would have inherited upon an intestacy of any part of the premises. When it shall be determined whether the devises to those who died before the testatrix lapsed or not, it will be easy to adjust the rights of the several parties in the premises, upon the facts ascertained by the supreme court. The judgments already given adjust, it is supposed, the respective interests accurately, upon the respective theories of the law upon which they are based. The question is whether these shares lapsed, or devolved upon the issue of the devisees by force of the act. The statute assumes that, but for its provisions, the devises in such a case would have lapsed; and such was the well settled doctrine of the common law. (*Brett* v. *Rigden*, Plowd. 340, 345; *Mowatt* v. *Carow*, 7 Paige, 328; *Bishop* v. *Bishop*, 4 Hill, 138.) This rule of the common law the legislature sought to change to a certain extent, but not wholly to abolish. It was not every devise or legacy which was to be preserved from lapsing where the beneficiary died before the testator, but only such as should be made to a child or other descendant of the testator, and gifts to such persons were not to be universally saved from lapse, but only where the bene-

ficiary named in the will had left a child or other descend-
ant surviving the testator.   And even then the subject was
not to devolve upon any one who could make title under
the beneficiary named, but it was to vest in such child or
other descendants as upon an intestacy of the devisee.
The devisees in this case not being children of the t sta-
trix, but her collateral relatives, the inquiry is whether
such collateral relatives are, in the sense of this enactment,
her descendants.   It cannot for a moment be maintained
that according to the common use of the word descendants,
it is not limited to such persons as proceed mediately or
immediately from the body of the person of whom it is
predicated, in the course of generation.   Descendants, when
used either in written or spoken language, when uncon-
nected with any qualifying word, describe the children,
grand-children, &c. of the person named, and where that
person is dead it embraces his posterity, however remote,
but it is confined to them.   Thus, we speak of the descend-
ants of Abraham, of William the Conqueror, of George the
Third, and of the first and second President Adams, of
Jefferson and Alexander Hamilton; while we say of Queen
Elizabeth, of William of Orange, of Washington and Madi
son, that they left no descendants, or, in the words of the
statute, that they respectively died leaving no child or
other descendant.   These are common forms of speech,
and the meaning is perfectly definite, and it is such as I
have mentioned.   The word is invariably employed in that
sense, in books of history, in memoirs, in biographies, in
works on genealogy, and in almost every book which treats
of men and their affairs.   I shall assume, therefore, that
the legislature have made use of a word having in common
parlance a definite meaning, which excludes nephews and
nieces and other collateral kindred; and I have next to say
that in construing statutes, words are generally to be under-
stood in their natural and popular sense.   There are, no
doubt, exceptions to this rule, where it may be permitted
to interpret words in the sense of a particular science or

branch of knowledge. In such cases language of a technical character is employed, and is frequently to be understood in a special sense.

The defendants' counsel relies upon this exception, and claims that as the statute in question relates to the transmission of the title of property upon the death of its owner, we are to construe the language in the sense of the law of successions. This seems very reasonable. The most authentic text of that law in this state, is in the statutes of descents and distributions; but there we find the word descendants employed in the ordinary and popular, and not in any artificial or scientific sense. The word descendants is used a great many times in the chapter of the revised statutes respecting the *title to real property by descent*, and always in the natural sense of lineal descendants. In several instances its meaning is in direct opposition to that attributed to it by the argument. For instance, the fifth section declares that in case the intestate shall die without lawful descendants, leaving a father, the inheritance shall go to the father. The sixth and seventh sections are devoted to prescribing the cases in which the inheritance shall descend to the father or mother, and to the brothers and sisters, or their descendants, and it commences by stating a condition common to all these cases, namely: "if the intestate shall die without descendants." In the last of these sections, the case in which there are no *descendants*, or any father or mother, is provided for by declaring that the inheritance shall descend *to the collateral relatives.* Here the expression, collateral relatives, is used in direct contrast to descendants. The statute of distributions is equally discriminating, and it uses the word descendants in the same sense. (2 R. S. 96, § 75.) In the third subdivision of the section, we find the direction, that if there be a brother or sister, nephew or niece, and no descendants or parent, the widow is to be entitled to a certain part, and the remainder is to be distributed to the brothers and sisters and their representatives. We discover in these provisions

no indication of the use of this important word in any artificial or technical sense. If we look into treatises and adjudged cases, we shall find the word steadily used in its primitive and popular sense. I will mention only a single treatise, and refer specially to one adjudged case, among a great number which I have examined; noting, however, where some others may be found. Jarman says: "A gift to descendants receives a construction answering to the obvious sense of the law, viz: as comprising *issue* of every degree." (Treatise on Wills, v. 2, p. 32.) And again: "The word issue, when not restrained by the context, is co-extensive and synonymous with descendants, comprehending objects of every degree." (Id. p. 33.) The allusion to the context or connection reminds me that, if the point were otherwise doubtful, the use of the word *child* in connection with descendants, would go far to point the meaning of the latter word. *Noscitur a sociis* is a maxim which applies in such cases. If it could be shown that the word descendants sometimes embraced collateral relatives, it would not be so here since it is associated with the word child. I think the language means child or other more remote offspring of the person named. The single case selected for reference is *Crosley* v. *Clare*. (Ambler, 397.) There was a testamentary gift of a remainder, in real and personal property, to "*the descendants* of Francis Ince, now living in and about Seven Oaks, in Kent, and hereafter living anywhere else." There was, it is true, no claim on behalf of collaterals, but the question was between children and grandchildren. Upon the argument of the defendants' counsel in the present case, the children only would have taken; for the position is, descendants mean those who would take by descent in case of intestacy. But the master of the rolls held that the grandchildren were entitled to participate. "It would be unjust," he said, in this case, "to confine it to the heirs at law, because the word descendants means all those who proceeded from his body;" and the descendants, though in different degrees, were adjudged to take *per*

*capita.* (See, also, *Pierson* v. *Garnet,* 2 Bro. C. C. 38; S. C., pp. 226, 230; *Davenport* v. *Hanbury,* 3 Ves. 257; *Butler* v. *Stratton,* 3 Bro. C. C. 367; *Leigh* v. *Norbury,* 13 Ves. 340.) I have found no case in which collateral relatives have claimed under a devise or bequest to descendants; and I am inclined to think this the first occasion in which the position has been taken that they were included under that description. If we turn to the chapter of Blackstone's Commentaries, in which he treats of *title by descent,* we shall find the word *descendant* constantly used to denote the issue mediate and immediate of the person of whom those descendants are predicated, and never in a sense which would include collateral relatives. (Book 2, ch. 14, pp. 223, 224.) It is urged, on behalf of the defendants, that the books habitually speak of the *descent* of real estate to the collateral heirs of the person dying seised; and it is claimed that the persons on whom the descent is cast must be descendants. This, I think, involves a fallacy. We use the word descent to describe the transmission of title from the deceased person to his heirs. The expression is figurative, and alludes, as Lord Coke supposes, to the principle of gravitation. (1 Inst. 11.) But the word descendants has reference to genealogy, or the succession of persons in the family relation, and has no necessary connection with the laws of inheritance. Land descends, in certain cases, from a son to his father, and from a man to his brother, but this does not prove that the father is the descendant of his son, or the brother of his brother, in any possible sense. It is correctly said that the law books and other writings commonly speak of *lineal* descendants; and it is argued that this would be improper if there were not another species of descendants; from which it is inferred that there are collateral descendants. But we rarely meet with this latter expression. The truth is that the word lineal in that connection is a pleonasm employed to emphasize the expression, and not, in general, to distinguish it from any other species of descendants; and so where *collateral*

*descendants* are spoken of, an elipsis is made use of—the phrase meaning the descendants of collaterals.    But it is further urged that if the devisees in this will are not within the words of the statute, they are within its intention, and that the act being remedial, they ought to be extended by an equitable construction, so as to meet the case of the defendants.  But this is a statute in derogation of the common law, and its operation ought not to be enlarged beyond the fair natural meaning of the language.    The former law was that where a devisee or legatee died in the lifetime of the testator, the gift lapsed, that is, became void.    The legislature, it is certain, did not intend wholly to abolish this rule, so that the heirs of the devisee should in all cases take as though he had survived the testator, but only to change it to a certain extent, and under certain special circumstances.    The case in which the new rule was to apply, was specially pointed out.    It was where property should be devised to a child or other descendant of the testator.    Where that circumstance did not present itself, the former rule was not changed.    Courts have no right to say, if they could fairly do so, that the motive for the change would be equally strong if the devise were to a collateral relative.    The legislature were the judges of that, and they have limited it to a devise to a descendant, and we can go no further than they have gone. If we should do so, other judges upon the same reasoning, might take another step, and hold that a devise to a stranger would be equally within the mischief.    But I think that independently of the strict words of the statute, there is good reason to believe that the legislature did not intend to go, and would not have been induced to go beyond the provision they have made.    There is a natural affection for one's own offspring, both mediate and immediate, beyond that which is felt for other relations, which the legislature thought proper to indulge to the extent mentioned in the statute.    And there was good reason for the limitation of the rule; for otherwise, the gift might

take a direction totally repugnant to the testator's wishes and affections. For example, should I devise an estate to a nephew, the son of my sister, and should he die, leaving no nearer kindred than a paternal uncle, or the issue of such an uncle, the estate, immediately upon my death, would go to an utter stranger to my blood; for if the word descendant, where it first occurs in the statute, would be satisfied with a collateral relative, the second use of it in the same sentence would require the same construction. The statute is motived upon the natural wish which every person feels that his possessions should be enjoyed after his death, by some one who owes his being to him. That sentiment is strong and universal. It furnished the climax to the misery of Macbeth when he uttered the pathetic exclamation:

> " Upon my head they placed a fruitless crown,
> And put a barren sceptre in my hand,
> Thence to be wrenched with an unlineal hand,
> *No son of mine succeeding.*"

If the possessor of property is so unfortunate as to have no posterity, the law, in the absence of a testament, distributes the estate amongst his collateral relatives according to its own sense of propriety. But it allows him to make his own selection by will. By the common law such selection became abortive, if the object of it died in his lifetime. That law, in ignorance of what would have been his wishes after that event happened, refused to interfere with the general laws of succession, and considered him to have died intestate to the extent of the interest so attempted to be given. But where the gift was to a child, grandchild, &c., who had died leaving issue, the statute under consideration yields a certain deference to the natural sentiments of affection for one's offspring, and makes the deceased devisee a new stock of descent, not to his heirs generally, but to the heirs of his body.

I am quite satisfied that the interpretation contended for by the defendants' counsel cannot be sustained.

It is urged, in the second place, that the devise may be considered, under the circumstances which have occurred, as made in favor of the heirs of the devisees. The gifts were to the devisees and their heirs. But those are words of limitation, inserted to show the extent of the interest devised, and are not words of purchase. The same point was taken in the case cited from Plowden, where lands had been in form devised to Henry Brett and his heirs forever, who died in the lifetime of the testator. The court answered the position as follows: "And as to the heirs being named in the gift, namely, to Henry Brett and to his heirs, for which reason it is alleged that they shall be contained and included in the intent of the devise, they said that the heirs are not named there to take immediately, but only to express the quality of estate which Henry should have." The principle of this case has been steadily followed in the English courts ever since. (*Hodgson* v. *Ambrose*, Doug. 337; *Denn* v. *Bagshaw*, 6 Term, 512, and cases there cited.) The provision of the revised statutes allowing a fee to be conveyed without words of inheritance does not change the rule. It does not follow, that because such words may now be dispensed with, that where they are inserted their legal effect is different from what it would have been before the statute. They were never absolutely necessary in a will, provided that it otherwise appeared that the testator intended to devise an estate of inheritance, yet the cases referred to arose upon wills, where words of inheritance in fee or in tail were used. In *Maybank* v. *Brooks* (1 Brown's C. C. 841), a legacy was held to have lapsed on account of the death of the legatee in the lifetime of the testator, though the bequest ran to the legatee, his executors, or assigns, notwithstanding that the addition of these words was unnecessary. The argument of the defendants' counsel proves too much; for if the addition of words of inheritance, since they have become unnecessary, enables the heirs to take as purchasers, I do not see that any deed or will, running to the party and his heirs, would vest an

estate in the heirs; but that would introduce inexplicable confusion into titles to land. Those words were either words of purchase or of limitation, at the time the will was executed, and their legal effect is not changed by the events which subsequently happened.

It is finally urged that if the judgment of the court should be adverse to the defendants upon the questions thus far considered, it ought to decree the will wholly void, and adjudge that the real estate attempted to be devised descended to the heirs at law of the deceased. It is quite possible that if the testatrix had foreseen that her devisees would have died in her lifetime, she would have named their issue as alternative devisees. But we can have no certainty of this. Perhaps she would have selected other persons for the object of her bounty. I have looked carefully into the several cases referred to in support of this last position, and find that in each of them there were provisions in the will under consideration which were void, for being in violation of some positive rule of law. (*Coster* v. *Lorillard*, 14 Wend. 265; *Hawley* v. *James*, 16 id. 61; *Root* v. *Stuyvesant*, 18 id. 257; *McSorley* v. *Wilson*, 4 Sand. Ch. R. 515; *Harris* v. *Clark*, 3 Seld. 242; *Amory* v. *Lord*, 5 id. 403.) The principle of these judgments seems to be that where the disposing scheme of the testator has been substantially defeated by the failure of the illegal provisions to take effect, the court will declare an intestacy as to the whole of the estate, or such parts of it as are inseparably connected with the void parts, though there are parts which standing alone would be valid. This result has not been reached without a severe struggle among the judges, as will be seen by the opinions delivered in the court of errors in *Root* v. *Stuyvesant.* But conceding the principle to be established to the extent which I have stated, it has no application to this case. Here no part of the will violated any rule of law. Simply, events occurred subsequently to the execution of the instrument and before the death of the testatrix, which defeated her intention as to three-fifths

of her estate, and she did not elect to make a new disposition as to these portions. Whether this was because she was content with the disposition which the law would make as to that part of the property; or the omission to make a new will arose out of accident or forgetfulness, we cannot say. We certainly know that she made valid gifts of two-fifths of her estate to devisees who survived her, and were therefore competent to take precisely according to her intentions. We cannot take from these devisees the property thus validly bestowed upon them. It would establish a dangerous precedent to set aside devises to one set of devisees, because those made in favor of another class have become inoperative by events transpiring after the execution of the will. I am satisfied that we have no right to do this.

I think the judgment appealed from ought to be affirmed.

All the judges concurred except Davies, J., who took no part in the decision. Judgment affirmed.