EDWARD R. HEWITT, Respondent, *v.* COOPER UNION FOR
THE ADVANCEMENT OF SCIENCE AND ART, Appellant.

**Trust — provision of deed of trust providing for selection of
trustees of Cooper Union — meaning and effect of provision
that " oldest lineal male descendant " of grantor should be
trustee of corporation — such provision means that oldest
lineal male descendant of the oldest line shall be entitled to
be a trustee.**

1. While in various statutes and by various authors the word " lineal "
is sometimes unnecessarily used to qualify the word " descendant " for
the purpose of emphasizing the fact that a descendant of the body is
meant rather than a collateral, yet in d cisions relating to primogeniture
the word " lineal " had a real significance distinct and separate from the
word " descendant," and was not used merely for the purpose of
indicating that the word " descendant " meant issue and not a
collateral.

2. Statutes (L. 1857, ch. 31; L. 1857, ch. 149, and L. 1859, ch. 279)
passed to enable the philanthropist Peter Cooper to found and establish
a scientific institution in the city of New York provided that the powers
of the corporation established by authority of said statutes should be
exercised by a board of trustees, who were named and consisted of
six people, and that " the manner of filling vacancies in the board of
trustees " should be as provided in the deed of property to the
institution to be executed by Mr. Cooper. This provision in the
deed provided for a board of six trustees, consisting in the first
instance of those named in the statute and " that the five survivors
of the said six trustees above named shall constitute the first board
of trustees consisting of five members; that every succeeding vacancy
in said board of trustees shall be filled by the surviving or remaining
trustees by ballot   *   *   *   and that the oldest lineal male descend-
ant of Peter Cooper shall be a trustee *ex gratia,* unless he be a trustee
by virtue of original appointment herein made, or by election as herein
provided.   *   *   *   If such oldest lineal male descendant of Peter
Cooper be not a trustee by virtue of such original appointment or
subsequent election, then and in such case, and until another vacancy
shall occur in the said board of trustees by the death or removal of a
trustee other than such oldest lineal male descendant of Peter Cooper,
the number of such trustees shall be six." When the Cooper act was
drawn it must be assumed that the Legislature and Mr. Cooper and
his attorney were acquainted with the law relating to primogeniture

and to the rules governing it, to which the rules adopted by Mr. Cooper for selecting a trustee were more or less akin; under these circumstances it is reasonable to assume that the word "lineal" had a significance such as was given to it in the rules of primogeniture and that it was not used merely to indicate that "descendant" did not mean a collateral.

3. If in construing this clause it is assumed that in the statute and the clause the words composing it were used with accuracy and each word is given its full and exact meaning, the word "descendant" would indicate a descendant from the body of Mr. Cooper and not a collateral, and the word "lineal" would refer to the line of descent leading from Mr. Cooper to such descendant. And when these two words "lineal" and "descendant" were qualified by the word "oldest" the conclusion is that the clause meant the oldest male descendant in the oldest line of descent. (*Thellusson Case,* 7 H. L. Cas. 429, followed.)

4. There is evidence that, in making the provision for the selection of trustees, Mr. Cooper gave to the word "lineal" important and accurate significance for, whereas the earliest act provided for a trustee who should be the "oldest male descendant of legal age," there was incorporated in the final deed and act the word "lineal," thereby naturally suggesting and adding the feature of line of descent, thus giving to the word "lineal" the same meaning and force as would have been given to it in a similar clause under the common law in a case of primogeniture. Under this construction, and the facts stated, Peter Cooper Bryce, being the grandson of the older son of Peter Cooper, is "the oldest lineal male descendant" of Peter Cooper and, as he is already a trustee by election, the plaintiff Edward R. Hewitt, the grandson of the younger son of Peter Cooper, cannot be, under the provisions of the deed, a trustee *ex gratia.*

*Hewitt* v. *Cooper Union for the Advancement of Science and Art,* 207 App. Div. 256, reversed.

(Argued April 16, 1924; decided June 3, 1924.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered December 14, 1923, in favor of plaintiff upon the submission of a controversy under sections 546–548 of the Civil Practice Act.

*Henry B. Closson* for appellant. The only reasonable construction of the phrase in question, having in view

both what was indisputably its significance at common law and what were the circumstances to which it was applied in its use in this New York deed and statute, is that it was used as an apt designation of the male descendant who at the time would be entitled to take the ancestral estate under the perfectly well-known rules of the law of primogeniture, to wit, the oldest male descendant of the oldest line; the estate passing to a male descendant of a younger line only in case of the failure of a male descendant of the older line. (*Thellusson* v. *Rendlesham*, 7 H. L. Cas. 429; 4 Ves. 227; 11 Ves. 112; *Oddie* v. *Woodford*, 3 M. & C. 584.)

*Milton C. Lightner* for respondent. The interpretation of the phrase unanimously sustained by the Appellate Division is the natural meaning to be given to these words under our law. (Fowler's Real Prop. Law, § 281; *Van Beuren* v. *Dash*, 30 N. Y. 393; *Levy* v. *M'Cartie*, 6 Pet. 102; *Armstrong* v. *Moran*, 1 Bradf. 314; *Tompkins* v. *Ver Planck*, 10 App. Div. 572; *Hamlin* v. *Osgood*, 1 Redf. 409; *Matter of Miller*, 45 Hun, 244; *Matter of Cook*, 187 N. Y. 253; *Wheeler* v. *Clutterbuck*, 52 N. Y. 67.)

Hiscock, Ch. J. This appeal involves the question of respondent's right to be selected as one of the trustees of appellant.

In 1857 an act (L. 1857, ch. 31) was passed " to enable Peter Cooper to found a scientific institution in the City of New York." After somewhat brief amendments made by another act (L. 1857, ch. 149) passed at a later date in 1857, an act was passed in 1859 (L. 1859, ch. 279) entitled " An amendatory act " of the original statute but really covering the entire subject and which is the act now before us. Only one of its provisions is directly involved and, therefore, we shall summarize it very briefly. It authorizes Peter Cooper to convey to the defendant thereby being created a block of land for the purpose of " founding

and establishing a public institution in said city (of New York) for the advancement of science, art, philosophy and letters * * * and upon the trusts, and subject to the conditions and restrictions contained in the deed " which was to conform in form with that set forth in the act and, also, " for and upon the uses, intents and purposes, and upon the trusts, and subject to the restrictions and conditions " as were thereafter mentioned in the act. The provision especially involved provided that the powers of the corporation should be exercised by a board of trustees who were named and consisted of six people and that " the manner of filling vacancies in the board of trustees " should be as provided in the deed to be executed by Mr. Cooper and referred to in the act.

The provision in the deed thus referred to and thereafter duly executed and whose terms in reference to the selection of trustees were adopted by the statute provided for a board of six trustees in the first instance and " that the five survivors of the said six trustees above named shall constitute the first board of trustees consisting of five members; that every succeeding vacancy in said board of trustees shall be filled by the surviving or remaining trustees by ballot * * * and that the *oldest lineal male descendant* of Peter Cooper shall be a trustee *ex gratia*, unless he be a trustee by virtue of original appointment herein made, or by election as herein provided. * * * If such oldest lineal male descendant of Peter Cooper be not a trustee by virtue of such original appointment or subsequent election, then and in such case, and until another vacancy shall occur in the said board of trustees by the death or removal of a trustee other than such oldest lineal male descendant of Peter Cooper, the number of such trustees shall be six."

The important words in these provisions and which we are to interpret are those providing for membership in the board of the " oldest lineal male descendant " and in this connection it is to be observed as a matter of some

importance that in the original act provision was made in certain contingencies for the selection as trustee " of the *oldest male descendant* of lawful age   *   *   *   of the said Peter Cooper."

The respondent claims that the contingency has now arisen which entitles him to be selected by defendant as one of its trustees as being the " oldest lineal male descendant " of Mr. Cooper and he thereby comes in conflict with the views of the defendant which has refused to thus select him.   The circumstances which precipitate this controversy are as follows:  Peter Cooper left two children.   One of these was Edward Cooper, who was the older and who left a daughter, Edith Cooper Bryce, who had an only son, Peter Cooper Bryce, who is now one of the board of trustees of defendant by regular election.   Mr. Cooper's younger child was a daughter who became Sarah A. Hewitt and of her the plaintiff, Edward R. Hewitt, is now the oldest child.   He is older than Peter Cooper Bryce who now sits in the board and he claims that under the provisions of the statute and deed hereinbefore referred to he is, therefore, the oldest lineal male descendant and should be added to the board *ex gratia* as its sixth member.   Thus the final contest becomes the one whether Peter Cooper Bryce or Edward R. Hewitt is designated by the words which have been quoted because, of course, if Peter Cooper Bryce is the oldest lineal male descendant and is already sitting in the board there is no place for Edward R. Hewitt.   The question is an unusual one and has been argued by counsel on briefs which are both interesting and helpful.

In construing this clause, if we should assume that the counsel, " learned in the law," who drew Mr. Cooper's deed (as is stated in the submission) and the Legislature which passed the statute adopting and thus interpreting his language, used with accuracy the words composing this short and important clause and gave to each word

its full and exact meaning there could be no real doubt that the clause describes as the trustee *ex gratia* Mr. Bryce and not Mr. Hewitt. On such assumption of the accurate use of words, the word "descendant" would indicate a descendant from the body of Mr. Cooper and not a collateral, and the word "lineal" would refer to the line of descent leading from Mr. Cooper to such descendant. And when these two words "lineal" and "descendant" were qualified by the word "oldest" we should easily reach the conclusion that the clause meant the oldest male descendant in the oldest line of descent and that, at the present time, would be Mr. Bryce. Evidence is not wanting that Mr. Cooper and the Legislature did give to the word "lineal" important and accurate significance for, whereas the earliest act provided for a trustee who should be the "oldest male descendant of legal age," we find in the final deed and act the word "lineal" incorporated, thereby naturally suggesting and adding the feature of line of descent.

In answer to this view, however, it is urged that authors and American writers and statutes have at times made sure of excluding collaterals by adding the word "lineal" in the classification of descendants. There is some force in this suggestion and yet one might hesitate to adopt it in this case. Concededly the use of the word "lineal" in mentioning a descendant of a man is superfluous. (*Van Beuren* v. *Dash*, 30 N. Y. 393.) And while we can understand, as has been the case, that a Legislature or even an author using words somewhat carelessly and certainly redundantly might seek to emphasize the meaning of descendant by prefixing "lineal," it seems rather improbable that a learned counsel in framing this clause and having before him the objects of such a project as this was would indulge in such pleonasm and use an utterly unnecessary and superfluous word to indicate what had already been sufficiently and accurately designated. It seems more reasonable to believe that

the word had some real meaning and significance than that it was an idle one carelessly thrown into an important clause which was to regulate the government of what was to become an historical institution reaching far into the future.

But if we should assume that under some circumstances redundancy and not accuracy would prevail and that this might have been done, we think that it would be going too far to believe that it was done in this particular case.

Comment was made at the Appellate Division and is now made by counsel upon the fact that the policy of primogeniture has been rejected as un-American and has never prevailed in this country. Nevertheless Mr. Cooper's plan in respect of this trustee *ex gratia* was fundamentally akin to the doctrine of primogeniture. He was providing for the title to an office which necessarily could only go to one person and could not be distributed amongst several and he desired to limit this title to one who was a male and who was the oldest either amongst all descendants or in a particular line. Thus there were present in his scheme the basic features of the theory of primogeniture with which English law was familiar and American law not so familiar. Without going to the extent of the argument made by appellant that in this case Mr. Cooper's counsel was Mr. Parsons, of English descent and, therefore, acquainted with English law, we are justified in assuming that both Mr. Cooper and his counsel and the Legislature were acquainted with and understood the common law bearing upon what they were trying to accomplish and were acquainted with the English decisions stating this common law. Apparently, from the briefs, the outstanding decision construing. in connection with the subject of primogeniture, language very similar to that before us was the *Thellusson* case reported on its last appeal in 7 House of Lords Cases, 429. There, with an abundant wealth of opinions, it

was held that in a clause reading " the eldest male lineal descendant "— a phrase somewhat less favorable to appellant than the one now before us — the word " lineal " did have a significance distinct and separate from the word " descendant " with which it was connected and that, qualified by the word " eldest " it indicated not only a male descendant but a male descendant in the oldest line of descent. While this case on the appeal which we have mentioned was decided subsequent to the passage of the Cooper statute there had been prior appeals decided before the statute was passed upholding the same view and in addition it was stated in the opinions of the judges on the last appeal that the application and meaning of the word " lineal " in connection with the word " descendant," which was adopted, was so common and well understood that no well-informed layman would be ignorant of it.

So we think that counsel in drafting and the Legislature in adopting the clause before us must be assumed to have known and understood what would be the meaning and significance of the word " lineal " used as it is in this phrase when applied to the theory of primogeniture and that in view of the analogy between the theory of primogeniture and the theory of qualification for the office of trustee which Mr. Cooper was creating, it is fair to believe that the same meaning and force was intended to be given to the word " lineal " in the present clause as would have been given to it in a similar clause under the common law in a case of primogeniture. That being so Mr. Bryce and not Mr. Hewitt is described.

Various arguments of convenience are brought into play by counsel on each side for the purpose of influencing the interpretation of the clause, but we do not think there is any preponderance in weight of those advanced by respondent.

On one side it is argued that after a male descendant of what was at the time the oldest line of descent had taken

his place as trustee there might be born a male child of an older line of descent and in this manner the sitting trustee be displaced. I am not certain whether when one who was at the time the oldest lineal male descendant had taken his place as trustee, he would be displaced by a male descendant of an older line subsequently born. It is not necessary to consider that question. But even if we should assume that that was the law and that in addition the male descendant designated by our interpretation might be an infant and so be incapable for the time being of acting as trustee, we do not think that these inconveniences would equal those which would result from adopting the respondent's theory. That theory, that the trusteeship was to be filled by the oldest male descendant of Peter Cooper anywhere to be found, might not be troublesome for two or three generations. But certainly at the end of several generations it would be a task of endless difficulty to inventory in all parts of the world all the male descendants of Mr. Cooper and then by a process of careful investigation and comparison determine who was the oldest one of the entire collection with the result, perhaps, of inducting into this trusteeship one who, by reason of excessive old age, would be quite as incapacitated to discharge its duties as one at the other extreme of infancy.

For these reasons we think that the judgment should be reversed and judgment granted for defendant.

CARDOZO, POUND, MCLAUGHLIN, CRANE, ANDREWS and LEHMAN, JJ., concur.

Judgment accordingly.